**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 25 CR 50005 |
| DANNY L. SPYKER, | Honorable Sunil R. Harjani |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

On May 13, 2026, a jury returned a verdict of guilty on Counts Three and Four of the Indictment against Defendant Danny Spyker, a federal correctional officer. [70]. Count Three was for sexual abuse of inmate S.G. in March 2024, and Count Four was for sexual abuse of inmate A.P. on that same date.[1] The jury acquitted Spyker on Counts One and Two, which involved similar allegations involving inmate S.G. on or about December 24, 2023. Spyker moved for a directed verdict at the close of the evidence [65] and for a judgment of acquittal, or in the alternative, for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33 [72]. For the reasons discussed below, Spyker's motions [65] [72] are denied.

**Legal Standard**

A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against a defendant. A court enters a judgment of acquittal under Rule 29 on the defendant's motion when the "evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. The question when reviewing the sufficiency of the evidence is "whether a reasonable jury considering the evidence in the light most favorable to the government could have found each element of the offense beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013). The Rule 29 standard is "a nearly insurmountable hurdle," which will only result in an acquittal "when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015) (internal citations omitted).

Under Rule 33, on a defendant's motion, a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. Such relief should only be granted in "those rare cases in which consideration of the evidence leaves a strong doubt as to the defendant's guilt of the charged offense." *United States v. Peterson*, 823 F.3d 1113, 1122 (7th Cir. 2016) (quoting *United States v. Washington*, 184 F.3d 653, 658 (7th Cir. 1999)).

---

[1] At this time, Spyker was a cook supervisor at Federal Correctional Institution Thomson and S.G. and A.P. were both inmates there.

**Discussion**

Spyker argues that there are two grounds on which he should be granted an acquittal or a new trial. First, he contends that the evidence was insufficient for a rational jury to have found the essential elements of guilt with proof beyond a reasonable doubt. Second, he claims that the limitations placed on his cross-examinations of A.P. and S.G. about their deception and dishonesty in their past crimes violated his due process and fair trial rights.

### I.       Motion for Judgment of Acquittal

Spyker contends that the evidence was insufficient to sustain his conviction. Evidence is insufficient when no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Scott*, 150 F.4th 929, 934 (7th Cir. 2025). Spyker argues that because the jury found him not guilty on Counts One and Two, they must have made a negative credibility determination about S.G., who also testified consistently with A.P. about the conduct in Counts Three and Four. Spyker further argues that S.G.'s and A.P.'s convictions for production of child pornography and possession of child pornography, their possible financial motive in a potential civil lawsuit against the Federal Bureau of Prisons, and their misstatements to investigators during the investigation into this incident raise concerns about the credibility of their testimony.

Overturning the jury's determination on S.G.'s and A.P.'s credibility would require an "exacting and rare determination that [their] testimony was incredible as a matter of law." *United States v. Conley*, 875 F.3d 391, 400 (7th Cir. 2017). Such determinations are reserved for "extreme situations" where it would have been impossible for a witness to observe what he described or impossible for those events to have occurred. *Id.*

Neither scenario is present here. There was ample evidence presented at trial which showed that Spyker committed sexual abuse of a ward against S.G. and A.P. in March 2024. Both S.G. and A.P. testified that Spyker directed A.P. to put Spyker's penis in his mouth and gave him oral sex and that A.P. did so. They also testified that Spyker put S.G.'s penis in his mouth and gave S.G. oral sex. Both A.P. and S.G. testified consistently with each other. Further, A.P. explained that he used a blue towel to clean up the area containing Spyker's semen, as well as their own. A.P. then placed the towel behind a sign in a closet and later reported it to investigators.

The government presented DNA evidence corroborating A.P.'s and S.G.'s version of events. A special investigative agent retrieved the blue towel, which was admitted into evidence. Special Agent Douglas Wolbeck testified that he sent the blue paper towel, along with known buccal samples from S.G., A.P., and Spyker, to the FBI laboratory for DNA testing. Forensic Examiner Kyle Ebersole testified that stains were identified on the blue paper towel from which six cuttings were taken and tested. Ebersole stated that each of the six cuts of the towel was between 7.9 billion and 55 septillion times more likely to be from Spyker than an unknown, unrelated contributor. There was also limited support for the presence of A.P.'s and S.G.'s DNA, along with substantial support for Spyker's DNA, on the fifth cut of the towel.

Further, the fact that the jury found Spyker guilty of the conduct during one altercation and not the other shows that the jury was carefully weighing and considering the evidence before them. *United States v. Armbruster*, 48 F.4th 527, 535 (7th Cir. 2022) ("[T]he jury's mixed verdict strongly suggests it parsed and weighed the evidence carefully, only to reach different conclusions on

2

different counts."). The verdicts were also not inconsistent. The jury could rationally determine that the government had not met its burden of proof on Counts One and Two, which was based on testimony and a video clip from the outside of the room (and not the inside) where the alleged altercation occurred, while separately finding that the government had proven beyond a reasonable doubt Counts Three and Four, where the testimony was supplemented with DNA evidence. *United States v. Torres*, 809 F.2d 429, 432–34 (7th Cir. 1987) (finding that a guilty verdict on one count is not inconsistent with a not guilty verdict on another count, if the government produced evidence from which a rational jury could conclude the defendant was guilty of that count); *United States v. Gonzalez*, 737 F.3d 1163, 1168 (7th Cir. 2013) (discussing how on a motion for acquittal a "jury's verdict is entitled to great deference" and absent insufficient evidence "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.") (internal quotations omitted).

In the alternative, even if the verdicts had been inconsistent, an acquittal on one count does not automatically invalidate a guilty verdict on another. *United States v. Bahena*, 71 F.4th 632, 639 (7th Cir. 2023) (internal quotations omitted). As discussed above, the jury had a sufficient basis to find guilt beyond a reasonable doubt on Counts Three and Four, when viewed in the light most favorable to the government, independent of Counts One and Two and when assessed as if they were the only charges. *Id.* Therefore, Spyker's motions for acquittal and for a directed verdict are denied.

## II.     Motion for a New Trial

In the alternative to vacating the jury's verdict, Spyker seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. Spyker argues that the limits placed on his cross-examination of A.P. and S.G. about the deception and dishonesty they employed in their prior convictions for production of child pornography operated to deny him an effective cross-examination in violation of his due process and fair trial rights.[2] Spyker's argument is two-fold. First, he argues that he was denied access to documents that he contends may have provided him a factual basis to argue that certain conduct by S.G. and A.P. should be admissible under Rule 608.[3] Second, Spyker argues that the Court's limitations on his cross-examinations deprived him of the right to fully cross-examine the government's witnesses under Rule 608.

An initial problem with this argument is that Spyker has not preserved the issue of cross-examining A.P. or S.G. on any of the matters he now complains about. First, Spyker failed to file any motions in limine ahead of trial. Instead, the government filed a motion in limine seeking to exclude the underlying facts and names of the criminal convictions of four of the government's

---

[2] Spyker's opening brief contains only a single sentence arguing this point, which provides no details on what he was prohibited from asking S.G. or A.P. or how those limitations impaired his rights to an effective cross-examination. [72] at 2. The Seventh Circuit has repeatedly held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (internal citation omitted). Spyker does not provide any details about what he was barred from asking about until his reply brief. [77-1] at 2–5. Generally, arguments raised for the first time in a reply brief are waived. *United States v. Payne*, 964 F.3d 652, 657 (7th Cir. 2020). Therefore, although the Court addresses the substance of Spyker's arguments, they are also waived.

[3] These documents would not be admissible under Rule 608(b), so Spyker's argument is limited to information he could have obtained from these documents.

3

witnesses, including A.P. and S.G. [42] at 4–6. Spyker never filed a motion seeking to cross-examine S.G. or A.P. about any topics and instead simply responded to the government's arguments. [44]. The Court denied the government's motion in limine to limit the Rule 609(a)(1) impeachment. The Court allowed Spyker to refer to S.G.'s and A.P.'s convictions for the manufacture of child pornography. [58]. The Court also denied the government's motion about Rule 608(b) cross-examination. It *sua sponte* asked the government to disclose information about the prior convictions that involved deceit. The Court then ruled that Spyker could cross-examine S.G. about the fact that he told a minor victim not to tell anybody about his criminal conduct and to delete messages between the two, and about how A.P. used other names on social media platforms. *Id.* Thus, in denying the government's motion, the Court gave Spyker significant ability to cross-examine S.G. and A.P. In his reply brief, Spyker "acknowledges that the Court allowed a wide degree of latitude in Defendant's ability to cross-examine the four main witnesses[.]" [77-1] at 2. As reflected above, he did not preserve these issues, and they are waived.[4]

Another waived argument from Spyker is that the government failed to provide him with the plea colloquy or the presentence investigation report in S.G.'s production of child pornography case, which purportedly may have provided more facts about S.G.'s conviction for production of child pornography. [77-1] at 2–3. Spyker similarly argues that he was not provided A.P.'s presentence investigation report, which he asserts may have provided him additional grounds to impeach A.P. *Id.* at 5–6. However, Spyker never filed a motion to produce these documents.[5] Instead, Spyker wrote that he lacked them in his response to the government's motion in limine. [44] at 2. Under Rule 12, motions for discovery must be raised pretrial and a court may consider an untimely motion only if the party shows good cause. Fed. R. Crim. P. 12(b)(3)(E), (c)(3); *United States v. Daniels*, 803 F.3d 335, 352 (7th Cir. 2015). Spyker fails to make a good cause showing here. "Absent a showing of good cause as required by Rule 12, his claim is not subject to further review." *United States v. Hopper*, 934 F.3d 740, 762 (7th Cir. 2019). As Spyker failed to request the evidence pretrial under Rule 12 and failed to argue why there is good cause to excuse an untimely request, any such request was waived. *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020).

Moreover, even if the argument were not waived, it still fails to provide a basis for a new trial. As reflected above, the Court ordered the government to include in its reply brief "all

---

[4] A forfeiture is an accidental or negligent omission, while a waiver is the manifestation of an intentional choice not to assert the right. *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). The Seventh Circuit has found waiver when "a defendant or his attorney expressly declined to press a right or to make an objection." *Id.* An attorney can waive a defendant's Sixth Amendment confrontation right, so long as the defendant does not dissent from his attorney's decision and the decision was a legitimate trial tactic. *Id.* at 418. Here, defense counsel made a tactical decision not to file motions in limine, thus, the arguments are waived.

[5] Spyker cannot claim this is *new* evidence since he was aware of it before trial and failed to exercise due diligence to obtain it. *United States v. Coscia*, 4 F.4th 454, 469 (7th Cir. 2021) ("A claim of diligence, however, is seriously undermined when the defendant fails to have a subpoena issued[.]"). Further, even if the presentence investigation report were to contain new impeachment evidence, normally "newly discovered impeachment evidence does not warrant relief under Rule 33." *United States v. Friedman*, 971 F.3d 700, 715 (7th Cir. 2020) (quoting *United States v. Reyes*, 542 F.3d 588, 596 (7th Cir. 2008)). There is an exception if a defendant's conviction depends entirely on a single witness's uncorroborated testimony, but that is not the circumstance here. *Id.*

statements from the cases of [S.G.], [A.P.], Mr. Landreneau, and Mr. Brown that involve lies, deceit or falsehoods." [45]. So, while Spyker was not provided with the plea colloquies or the presentence investigation reports, he was given all statements in the government's possession involving lies, deceit, or falsehoods by S.G. and A.P. during the commission of their crimes. Thus, Spyker was not deprived of the ability to uncover facts that may have gone towards S.G.'s and A.P.'s deceptive conduct. In his current motion, Spyker merely speculates that there may have been a factual basis in these documents—different from what the government proffered—for him to have raised additional arguments. His speculation about the contents of documents he never filed a motion to receive is not a basis to grant him a new trial. Further, even if the motion was properly before the Court, the decision to deny Spyker this cumulative evidence is not a basis for a new trial. *United States v. Jarrett*, 705 F.2d 198, 206–07 (7th Cir. 1983) (finding the district court did not err when denying discovery to impeach the prosecution's witnesses because the defense failed to describe the nature of the documents sought and the evidence would have been cumulative).

Spyker's next argument about the limitations placed on his cross-examinations of the inmate witnesses is equally unavailing. Spyker argues he should have been allowed to cross-examine A.P. about statements his child victim made about not wanting A.P. to get in trouble. But a defendant's right to effectively cross-examine the witnesses against him is not unlimited. *United States v. Yumang*, 164 F.4th 601, 610 (7th Cir. 2026). "'Trial judges retain wide latitude ... to impose reasonable limits' on cross-examination, including by foreclosing inquiries that are 'only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)) (cleaned up). Further, Rule 608(b) allows cross-examination to attack a witness's character for truthfulness, but it does not open the door to every question an attorney may want to ask. *United States v. Dvorkin*, 799 F.3d 867, 883 (7th Cir. 2015). Instead, Rule 608 grants broad discretion to the trial judge to limit such questions on other grounds, such as hearsay or Rule 403. *Id.* At the pretrial conference, the Court rejected Spyker's argument that statements by A.P. to the victim that his conduct was normal behavior were not within the admissible scope of untruthfulness under Rule 608, as their connection was too tangential to be admissible given the significant Rule 403 concerns. The Court differentiated the Rule 608 and Rule 403 balance of these statements by A.P. compared to those of S.G.—who Spyker was allowed to cross-examine on his statements to a minor victim not to tell anyone about his abuse as they were closer to demonstrating deceit. Now, Spyker argues that the child's statement about not wanting to get A.P. in trouble was evidence that A.P. told the child not to say anything. Therefore, according to Spyker, he should have been allowed to cross A.P. on that statement for the same reasons he could cross S.G. [77-1] at 4. However, Spyker failed to make this argument before or during his trial. Instead, Spyker had argued that A.P.'s statements were intended to entice the child to think the conduct was normal, which the Court addressed. Further, Spyker's new argument, as with his original one, was too tangential to any character for untruthfulness given the significant prejudice under Rule 403. Spyker failed to address the Rule 403 prejudice in his present motion and instead only argued that he was deprived of the ability to cross-examine A.P. under Rule 608.[6] Although impeachment is at the core of the Confrontation Clause, judicial limits on cross-examination to exclude "irrelevant or marginally relevant impeachment evidence falls within the trial judge's wide discretion and does not deprive the accused of a reasonable opportunity to confront the witnesses against him."

---

[6] Spyker also failed to provide any authority to support this argument, and it is therefore waived. *Cisneros*, 846 F.3d at 978.

*Yumang*, 164 F.4th at 610. Here, the child's statement is of marginal relevance to A.P.'s character for truthfulness, and given the significant prejudice under Rule 403, it was properly excluded.

Spyker also argues that his cross-examination of three of the government's witnesses—S.G., A.P., and Landreneau—was limited because the Court granted the government's motion in limine barring questioning into their prison disciplinary history. [77-1] at 4–5. The Court prohibited Spyker from questioning S.G. and Landreneau about their use of other inmates' phone accounts and A.P.'s possession of a prohibited item under Rule 608(b), as they did not go to the character for untruthfulness. Further, even if there was some probative value in the use of another inmate's phone account, it was significantly outweighed by the unfair prejudice under Rule 403. While Spyker argues that he was unable to question S.G. and Landreneau about using other inmate's phone accounts, which he refers to as being "inherently deceptive," he does not address the Court's finding that using another inmate's phone account was only tangentially related to the question of untruthfulness and that the unfair prejudice that the jury might place on this information under Rule 403 outweighed any probative value. Spyker also fails to articulate why A.P.'s discipline for the possession of a prohibited item would have probative value to the question of A.P.'s character for truthfulness. Therefore, the exclusion of this, at most, marginally relevant information, when compared to the potential unfair prejudice, does not provide Spyker a basis for a new trial.

Finally, Spyker argues he was denied a full and fair opportunity to confront the witnesses against him because of the limitations placed on his cross-examinations and that he was not provided the plea colloquy for S.G. or the presentence investigation reports for S.G. and A.P. [77-1] at 5–6.[7] According to Spyker, this testimony was critical to the jury's findings against him, and its exclusion should be considered under *United States v. Bagley*, 473 U.S. 667 (1985). *Id.* Under *Bagley*, extrinsic evidence is not admissible to prove specific instances of a witness's conduct under Rule 608(b), but "withholding such evidence from the defendant still falls within the ambit of *Brady* if inquiring about the witness's conduct during cross-examination 'may [have made] the difference between conviction and acquittal.'" *United States v. Morales*, 746 F.3d 310, 315 (7th Cir. 2014) (quoting *Bagley*, 473 U.S. at 676). While Spyker never argued that the evidence falls within the ambit of *Brady*,[8] even if he had, it would not meet the standard established by the Supreme Court for a new trial. Evidence is "material for *Brady* purposes only if there is a 'reasonable probability' that its disclosure to the defense would have changed the result of the trial." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). Spyker has not met that standard here. Spyker was given all the statements in the government's possession "that involve[d] lies, deceit or falsehoods." [45]. While Spyker attacks the credibility of the government's witnesses,

---

[7] To the extent Spyker is also asserting that the mixed verdict is evidence that these limitations entitle him to a new trial, this argument fails for the same reasons it did not support an acquittal.

[8] Spyker does not argue that the material was *Brady* evidence or that the failure to provide it to him was a *Brady* violation. Instead he states that "every disclosure made in response to the Court's Order that all deceptive acts be provided to Defendant's counsel should have been provided by the United States as each listed item of deception is arguably *Brady* material to the extent that it is a means of casting doubt on the credibility of the testimony of S.G. and A.P., the Government's only two claimed eyewitnesses to the crimes for which Defendant was indicted in a case that was all about credibility of the Government's witnesses." [77-1] at 3. Spyker also failed to argue at any point before trial that this material was *Brady* evidence that should have been provided.

the jury was aware of S.G.'s and A.P.'s prior convictions for manufacturing child pornography, and Spyker was granted wide latitude in his ability to cross-examine the witnesses about their deceit. Further, he does not address the DNA evidence linking him to the crimes for which he was convicted. As discussed above, the DNA evidence against Spyker on Counts Three and Four was more than sufficient for a jury to find him guilty of sexual abuse of a ward beyond a reasonable doubt, particularly when the jury acquitted Spyker of the offenses where there was no DNA evidence. Therefore, the additional evidence Spyker argues for in his motion does not have a reasonable probability of changing the result of the trial.

Rule 33 allows for a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, that power "is reserved for only the most extreme cases," where "the evidence leaves a strong doubt as to the defendant's guilt of the charged offense[.]" *United States v. Peoples*, 119 F.4th 1097, 1101–02 (7th Cir. 2024) (internal quotations omitted). This is not one of those cases. Thus, Spyker's motion for a new trial is denied.

### Conclusion

For the above reasons, Spyker's motion for a directed verdict [65] and motion for a judgment of acquittal, or in the alternative, for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33 [72] are denied.

**SO ORDERED.**

Dated: July 21, 2026

Sunil R. Harjani
United States District Judge

7